IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CUNNINGHAM ENERGY, LLC, et al.,

        Plaintiffs,

v.                                CIVIL ACTION NO.   2:13-cv-20748

THOMAS OUTMAN, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendants' Motion to Dismiss [Docket 3]. The plaintiffs have responded and the motion is ripe for review. For the reasons stated below, the defendants' motion is **GRANTED**.

**I.    Background and Procedural History**

This case arises out of alleged defamatory statements made to plaintiff Cunningham Energy, LLC's investors. The following facts are culled from the plaintiffs' Complaint.

Cunningham Energy is a West Virginia limited liability company of which plaintiff Ryan E. M. Cunningham is the majority equity owner and chief executive officer. (Compl. ¶¶ 1, 2 [Docket 1]). Defendant Thomas Outman is an Indiana resident. (*Id.* ¶ 3). Defendant Hoosier Buckeye Oil Ventures, LLC ("Hoosier Buckeye") is an Indiana limited liability company based in Indiana. (*Id.* ¶ 4).

In March 2011, Mr. Outman, through Hoosier Buckeye, invested in a number of drilling programs undertaken by Cunningham Energy. (*Id.* ¶ 5). The investments totaled $73,848. (*Id.*).

Unhappy with the performance of some of the drilling projects, Mr. Outman asked for his investment to be returned in April 2013. (*Id.* ¶¶ 8-9). The plaintiffs apparently refused to return the defendants' investment. Mr. Outman vented his frustration by emailing a representative of Cunningham Energy, stating, "We will seek legal remedies through interstate securities and criminal fraud complaints against Cunningham Energy. In addition, we will make public our concerns through various media postings and investor specific sites." (*Id.* ¶ 10). The plaintiffs consider these statements a threat. (*Id.*).

In June 2013, Mr. Outman hired a private investigation firm, Colt Ledger & Associates, Inc. ("Colt"). (*Id.* ¶ 11). Colt and its employees are not named as defendants in this case because they have "numerous lawsuits against them and, upon information and belief, are judgment proof." (*Id.* ¶ 11). The plaintiffs allege that Colt emailed a questionnaire to "scores and probably hundreds" of Cunningham Energy's investors that implied Cunningham Energy is "a dishonest or fraudulent operator." (*Id.* ¶ 13). The questionnaire states that Colt was

> hired by [Cunningham Energy] investors to ascertain the possibility that they were defrauded by [Cunningham Energy] and its officers, employees, and associates. This is a PRELIMINARY investigation. There is no inconclusive [sic] evidence of wrong doing [sic] at this time. There are some activities that need to be clarified. We are simple [sic] gathering information for the purpose of clarification.

(*Id.* Ex. 3). The Colt questionnaire requested information regarding how investors were contacted by Cunningham Energy, whether they knew the person contacting them, whether they received materials from Cunningham Energy in the mail, whether they received a follow-up sales call to discuss the merits of the investments, and whether they had signed a contract and sent Cunningham Energy a check. (*Id.*). Colt asked that recipients contact it "ASAP" if they had answered "yes" to at least three of their questions, or if they had "any experience with [Cunningham Energy], pro or con." (*Id.*).

The plaintiffs filed the Complaint on June 21, 2013 in the Circuit Court of Kanawha County, West Virginia. The plaintiffs allege three counts: (1) libel *per se*, (2) tortious interference with contractual relationships, and (3) common law extortion. The plaintiffs seek compensatory and punitive damages. The defendants removed the case to this court on July 22, 2013. The defendants now move to dismiss all three counts for failure to state a claim.

## II. Defendants' Motion to Dismiss for Failure to State a Claim

The defendants move to dismiss the each count in the Complaint for failure to state a claim upon which relief can be granted. For the reasons discussed below, the defendants' motion is **GRANTED**.

### A. Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. As the Supreme Court stated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 556 U.S. at 677-78. "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged―but it has not 'show[n]'―'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint must contain enough facts to "nudge[] [a] claim cross the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### B. Defamation

In West Virginia, the elements for a successful defamation action are "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983). For the reasons stated below, the defendants' motion is **GRANTED** with respect to plaintiffs' defamation claim.

The defendants argue that the statements in the Colt questionnaire are not defamatory because they are literally true. In West Virginia, a statement is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983). Defamation may be accomplished through inference, implication, innuendo, or insinuation. *Id.* Whether a statement is capable of defamatory meaning is a question of law.

*Belcher v. Wal-Mart Stores, Inc.*, 568 S.E.2d 19, 26 (W. Va. 2002). The plaintiffs argue that the Colt questionnaire is defamatory by implication. (*See* Compl. ¶ 18). However, as the Fourth Circuit explained, a plaintiff asserting defamation by implication must satisfy a high standard under the United States Constitution.

> [B]ecause the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true. The language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference.

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993). Thus, language that is literally true is defamatory only if it satisfies both prongs of the *Chapin* test. The language must be reasonably read to impart false innuendo, *and* it must affirmatively suggest that the author intends or endorses the inference. I **FIND** that the Colt questionnaire does not affirmatively suggest that the author intends or endorses the inference that Cunningham Energy is fraudulent. I do not decide whether the questionnaire can reasonably be read to impart false innuendo.

There is no question that the language in the questionnaire is literally true. The questionnaire does not accuse Cunningham Energy of fraud, but it states that Colt is undertaking an investigation on that subject. Thus, the *Chapin* test applies. The questionnaire does not meet the second part of the *Chapin* test because the questionnaire's language does not affirmatively suggest that Colt intends or endorses the defamatory inference. It does not say that Colt believes fraud has occurred. It says only that Colt was retained to "ascertain the possibility" of fraud. It further states that Colt has "no inconclusive [sic] evidence of wrong doing [sic]." Nowhere does the language *affirmatively* suggest that Colt intends readers to believe that Cunningham Energy committed fraud. Accordingly, the Colt questionnaire is not capable of defamatory meaning.

### C. Tortious Interference with Contractual Relationships

The defendants move to dismiss the plaintiffs' claim for tortious interference with contractual relationships. For the reasons discussed below, the defendants' motion is **GRANTED**.

West Virginia recognizes a cause of action based on tortious interference with contractual relations. *See Torbett v. Wheeling Dollar Sav. & Trust*, 314 S.E.2d 166, 171 (W. Va. 1983). To maintain a tortious interference claim, a plaintiff must show (1) existence of "a contractual or business relationship or expectancy"; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) causation; and (4) damages. *Id.* at 173.

I **FIND** that the Complaint does not allege that the defendants' actions caused the plaintiffs to suffer any damages. The Complaint does not allege that Cunningham Energy lost a single investor as a result of the Colt questionnaire. The plaintiffs have alleged damages outside of the pleadings, however. In their opposition to the motion to dismiss, the plaintiffs state that, as a result of the Colt questionnaire, "investments in [Cunningham Energy] oil drilling operations fell substantially." (Pls.' Resp. to Defs.' Mot. to Dismiss [Docket 7], at 4). These allegations are not in the Complaint. I cannot consider allegations made outside of the pleadings, including allegations asserted in a memorandum opposing the motion to dismiss. *See* James Wm. Moore et al., Moore's Federal Practice § 12.34(2).

Accordingly, I **FIND** that the plaintiffs have not stated a claim upon which relief can be granted for tortious interference with contractual relationships.

### D. Extortion

The defendants move to dismiss the plaintiffs' claim for extortion. For the reasons discussed below, the defendants' motion is **GRANTED** with respect to the extortion claim.

The defendants argue that there is no private right of action for violation of West Virginia's criminal extortion statute. That statute provides that

> [i]f any person threaten injury to the character, person or property of another person, or to the character, person or property of his wife or child, or to accuse him or them of any offense, and thereby extort money, pecuniary benefit, or any bond, note or other evidence of debt, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than five years. And if any person make such threat of injury or accusation of an offense as herein set forth, but fail thereby to extort money, pecuniary benefit, or any bond, note or other evidence of debt, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than two nor more than twelve months and fined not less than fifty nor more than five hundred dollars.

W. Va. Code § 61-2-13. Because § 61-2-13 does not expressly create a private right of action, the plaintiffs rely on § 55-7-9, which states that "[a]ny person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation . . . ."

The plaintiffs' reliance on the extremely broad language of W. Va. Code § 55-7-9 to support their argument is misplaced. The Supreme Court of Appeals for West Virginia has interpreted that statute "to provide for a rebuttable prima facie presumption of negligence upon a showing that a statute was violated." *Sartin ex rel. Sartin v. Evans*, 414 S.E.2d 874, 877 (W. Va. 1991). Thus, § 55-7-9 only creates a presumption of negligence, not a private right of action for every violation of every statute.

Further, under West Virginia law, to determine whether a statute contains an *implied* private right of action, a court must apply the following test:

> (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

*Hurley v. Allied Chem. Corp.*, 262 S.E.2d 757, 758 (W. Va. 1980). Although all prongs of the

*Hurley* analysis have weight, and none is determinative, "legislative intent is the polar star in determining the existence of a private cause of action." *Fucillo v. Kerner ex rel. J.B.*, 744 S.E.2d 305, 310 (W. Va. 2013).

I will proceed to analyze whether an implied private right of action exists for extortion using the four-part test in *Hurley*. The first and fourth prongs of the *Hurley* test are plainly met. Section 61-2-13 acts to protect the public from extortion by threats. The plaintiffs allege that they were the victims of the defendants' threats to paint the plaintiffs as fraudulent. (*See* Compl. ¶ 10 [Docket 1]). The fourth prong is satisfied because regulation of run-of-the-mill criminal extortion is not delegated exclusively to the federal government.

The second prong is not met because there is no clear legislative intent to create a private right of action. The extortion statute provides criminal penalties for its violation. There is nothing within the text of § 61-2-13 to indicate, even impliedly, that a private right of action exists. The plaintiffs have not pointed to any authority, other than § 55-7-9 (which creates only a presumption of negligence upon violation of a statute), which would convince me otherwise.

The third prong is not met because a private right of action is not consistent with the underlying purposes of the legislative scheme. Section 61-2-13 is placed within the chapter entitled "Crimes and Their Punishment." This chapter describes other crimes, including homicide, stalking, and robbery. Each of the other crimes contained in Chapter 61 contains its own penalties. It is difficult to believe that the legislature intended to create a private right of action for extortion, but not for each of the other enumerated offenses contained in the same chapter.

Finally, as the defendants argue, the Supreme Court of Appeals of West Virginia appears to have foreclosed a private right of action for extortion. As support, the defendants cite *Machinery Hauling, Inc. v. Steel of W. Va.*, 384 S.E.2d 139 (W. Va. 1989). There, the court found that the

8

extortion statute had not been violated, and the court did not reach the question of whether a private right of action exists under § 61-2-13. *See Machinery Hauling, Inc. v. Steel of W. Va.*, 384 S.E.2d 139, 141 (W. Va. 1989) ("[S]ince there was no threat in the legal sense, the facts would not appear to come within the statutory language of [the criminal extortion statute]."). However, the court recently cited *Machinery Hauling* in a parenthetical for the proposition that there is "no private cause of action under W. Va. Code § 61-2-13, [the] criminal extortion statute, for one alleging threats to sever business relations unless payment [is] made for [a] defective product." *Fucillo v. Kerner ex rel. J.B.*, 744 S.E.2d 305, 310 (W. Va. 2013).

Accordingly, I **FIND** that there is no private right of action for violations of West Virginia Code § 61-2-13.

### III. Conclusion

For the reasons discussed above, the Defendants' Motion to Dismiss [Docket 3] is **GRANTED**. The court **ORDERS** that judgment be entered in favor of the defendants and that this case be dismissed and stricken from the docket of this court.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 18, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE